IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WAR N. MARION,

                    Plaintiff,                                    ORDER

            v.                                                    07-cv-243-bbc

CAPTAIN DYLON RADTKE,
SUPERVISOR JANEL NICHOLS
and LT. KELLER,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff War N. Marion has filed a 12-page, hand-written, single-spaced document

that he calls "Response to Barbara B. Crabb's Decision May 1, 2009."  Dkt. #15.  In that

order, I re-screened plaintiff's complaint in accordance with Marion v. Columbia Correction

Institution, 559 F.3d 693 (7th Cir. 2009), in which Court of Appeals for the Seventh Circuit

reversed this court's June 8, 2007 screening order and concluded that a punishment of 240

days in segregation could give rise to a liberty interest for the purpose of triggering the

protections of the due process clause of the Fourteenth Amendment.  In the May 1 order,

I concluded that, under Marion, plaintiff had stated a claim upon which relief may be

granted on his claim that defendants Dylon Radtke, Janel Nichols and Lt. Keller denied him

1

due process by refusing to allow him to call two staff witnesses and denying him an opportunity to appear at a disciplinary hearing before placing him in "DS-1" segregation. However, I dismissed the complaint with respect to several other defendants plaintiff named because he had not alleged that they were personally involved in the decision to deny him due process. Dkt. #14.

In his "response" to the May 1 order, I understand plaintiff to be raising four separate motions: (1) to reconsider various aspects of the May 1 order; (2) to recuse myself from this case; (3) to give him leave to amend his complaint; and (4) to appoint counsel.  I will address each of these motions in turn.


Motion for Reconsideration

Plaintiff argues first that I read the court of appeals' decision incorrectly to say that his placement in segregation "did not" trigger due process protections.  However, it is plaintiff who seems to be misreading the May 1 order.  The passage plaintiff cites simply restates this court's conclusion *before* the appeal and notes the court of appeals' disagreement with that conclusion.  Dkt. #14, at 1-2 ("The court [of appeals] noted that it was premature for this court to decide in its screening order that [plaintiff's] segregated confinement did not trigger due process protections.")  If I had read the appellate decision the way plaintiff suggests I did, I would not have allowed him to proceed against any defendants.

2

Plaintiff's second argument is less clear, but it seems to be that I erred in concluding that he will have to prove as part of his claim that conditions of his segregation "were significantly harsher than those in the normal prison environment." This language comes directly from the court of appeals' decision, <u>Marion</u>, 559 F.3d at 698, so it is not something I may "reconsider." To the extent plaintiff believes that the court of appeals resolved this question, he is wrong. The court did not come to any conclusions about the severity of his conditions; it held only that it could not rule as a matter of law that plaintiff's conditions were not sufficiently severe. <u>Id.</u> at 699. ("Without a factual record, we cannot determine whether the actual conditions of Mr. Marion's lengthy segregation are harsher than the conditions found in the most restrictive prison in Wisconsin.")

Third, plaintiff seems to be saying that I erred in concluding that he may not proceed with his claims under the equal protection clause and state regulations. I dismissed both of these claims in the June 2007 screening order; in the May 1 order, I noted that the court of appeals did not disturb these earlier rulings. With respect to his equal protection claim, the court of appeals said only that he did not raise that claim on appeal; the court said nothing about plaintiff's claim under state law.

Although plaintiff is correct that the court of appeals did not discuss the merits of these claims, this does not mean that the claims may be revived. The rulings of this court are binding on plaintiff unless they are reversed by the court of appeals or the Supreme

3

Court.  Because the court of appeals' decision was limited to the due process claim, this court's previous conclusions about plaintiff's other claims must stand. <u>Williams v. Commissioner of Internal Revenue</u>, 1 F.3d 502, 503 (7th Cir. 1993) ("If a final judgment ha[s] been entered, the case appealed, the judgment reversed, and the case remanded, the trial judge [is] required to adhere on remand to the rulings that he had made before the case was first appealed, provided of course that they [were] not . . . set aside by the appellate court.")  Plaintiff seems to believe that the court of appeals erred in failing to consider these claims, but if that is true, the appropriate response was to file a motion for reconsideration with the court of appeals.  It is too late to revisit that issue now.

This means that plaintiff's fourth argument must be rejected as well, which is that the decision of the court of appeals requires me to eliminate the "strike" I recorded in the original screening order.  Under <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007), a prisoner receives a "strike" under 28 U.S.C. § 1915(g) if even *one claim* in a case is dismissed for failure to state a claim upon which relief may be granted. Because I dismissed two of plaintiff's claims and those dismissals have not been reversed by the court of appeals, the strike remains.

Finally, plaintiff challenges my conclusion that he failed to state a claim upon which relief may be granted with respect to Peiser, Nelson, Winslow-Stanley, Grams, Clements and Garrison.  His first argument is a general one, which is that these defendants should not have

4

been dismissed before "any factual record could be established." Dkt. #15, at 3. Plaintiff is correct to the extent he means to say that he is not required to come forward with evidence at the pleading stage. <u>Simpson v. Nickel</u>, 450 F.3d 303, 306 (7th Cir. 2006). However, he is wrong to the extent he means to say that no claim may be dismissed before the parties engage in discovery. A court may dismiss a claim for failure to state a claim upon which relief may be granted when the plaintiff pleads enough facts to show that he cannot prevail on his claim, <u>Edwards v. Snyder</u>, 478 F.3d 827, 830 (7th Cir. 2007), or when the allegations fail to "state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

Nelson and Winslow-Stanley are the two staff witnesses that plaintiff wished to call at his hearing. Plaintiff is proceeding on a claim that defendants Nichols (the security director) and Radtke (a captain) refused to allow him to call Nelson and Winslow-Stanley. I dismissed plaintiff's claims against Nelson and Winslow-Stanley because he had not alleged that they were involved in denying him due process. In his motion, plaintiff includes a new allegation that Winslow-Stanley "told Andrea Nelson not to testify." Dkt. #15, at 4..

Although plaintiff's argument is not clear, he may mean to say that Winslow-Stanley and Nelson should be held liable because they intentionally made themselves unavailable to testify. Even if this is true, I do not believe that plaintiff may proceed against Winslow-Stanley and Nelson under 42 U.S.C. § 1983. Plaintiff's claim is not one for a witness's

5

failure to cooperate, but a denial of due process; it was not Winslow-Stanley's and Nelson's obligation to provide plaintiff with process; it was the obligation of the officers who were running the hearing. Plaintiff *does* have a limited right to compel witnesses to testify at a disciplinary hearing, Forbes v. Trigg, 976 F.2d 308, 317-18 (7th Cir. 1992); this is why I allowed plaintiff to proceed against Nichols and Radtke for failing to call the two staff witnesses.   But the appropriate defendants in Forbes and in this case are the prisoner administrators who failed to bring the witnesses to the hearing, not the proposed witnesses themselves. E.g., Dalton v. Hutto, 713 F.2d 75 (4th Cir. 1983) (concluding that prisoners have limited right to compel presence of witnesses at disciplinary hearings, noting that "*prison administration* can practically encourage, if not compel, its employees and residents to appear before disciplinary committees when requested to do so").   Plaintiff cites no authority to the contrary.

Alternatively, plaintiff argues that Nelson should be "held responsible for her perjured testimony." Dkt. #15, at 5.   Plaintiff does not explain what he believes Nelson lied about or in what context.   I presume that by "testimony," plaintiff means an oral or written statement she provided before the disciplinary hearing.   Whatever plaintiff means, it is not a viable claim.   The court of appeals has held that it "will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent." McPherson v. McBride, 188 F.3d 784, 787 (7th Cir. 1999); see also Lagerstrom v. Kingston, 463 F.3d 621, 624-25 (7th

6

Cir. 2006).  Although this law may seem unfair, it relates to the nature of the due process clause, which is directed primarily at improving the accuracy of decisions through fair *procedures* rather than direct review of the evidence.   McPherson, 188 F.3d at 787 ("Therefore, even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process.") This means that plaintiff's claim against Garrison must fail as well, because the only wrongdoing by him that plaintiff identifies is falsifying information in the conduct report.

Next, plaintiff argues that Peiser, his staff advocate, should not have been dismissed from the case.  Plaintiff's claim against Peiser is that she failed to provide him with an adequate defense.  In the May 1 order, I noted that prisoners are not entitled to a staff advocate under the due process clause unless the prisoner is illiterate or the case is very complex.  Wolff v. McDonnell, 418 U.S. 539, 570 (1974).  Plaintiff does not suggest that he is illiterate; although he says in his motion that the issues at his hearing were complex, he fails to identify any.  According to plaintiff, the question at the hearing was whether plaintiff or the other prisoner was the aggressor in the altercation.  That type of claim does not meet the Wolff standard.  Cf. Miller v. Duckworth, 963 F.2d 1002, 1004 (7th Cir. 1992) (prisoner not entitled to representation by staff advocate on charge of escape).

Alternatively, plaintiff suggests that Wolff does not apply because Wisconsin regulations provide a different standard for governing a prisoner's right to assistance in

disciplinary proceedings.  The provision plaintiff cites, Wis. Admin. Code § DOC 303.78(2), does not establish a standard for appointing advocates, but merely outlines their purpose. In any event, even if state regulations provide a different standard, "[t]he Supreme Court has made [it] clear [that] the requirement of due process is not defined by state rules and regulations, but is an independent determination." Boyd v. Owen, 481 F.3d 520, 524 (7th Cir. 2007).

This leaves Gregory Grams (the warden) and Marc Clements (the deputy warden). In the May 1 order, I dismissed the complaint as to them because plaintiff did not include *any* allegations about them with respect to a failure to provide process.  Plaintiff admits in his motion that he "didn't describe the violation of Gregory Grams and Marc Clements in his complaint." Dkt. #15, at 5.  However, he includes new allegations that Grams and Clements may be held liable because they failed to investigate the wrongdoing of the other defendants.  Plaintiff cannot prevail on such a claim.  Again, the question in this case is whether defendants provided plaintiff with the process he was due, not whether high-ranking officials conducted an appropriate investigation after the fact.  It may be good practice to conduct such an investigation, but plaintiff does not have a constitutional right to one. Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002) ("As long as they did not deprive [the prisoner] of his opportunity to contest the merits of the charge before the grievance board or sabotage his chance to obtain redress in court, the defendants' uncooperative approach

8

is not an independent constitutional tort; there is no duty to assist in an effort to obtain private redress, and calling lack of assistance a 'cover up' adds nothing.")

Motion for Leave to Amend the Complaint

In one paragraph of his motion, plaintiff asks for leave to amend his complaint to include claims for "denial [of] access to the court and opening of legal mail outside" his presence. Dkt. #15, at 8. Plaintiff's motion will be denied for two reasons. First, plaintiff fails to provide the notice of his claim required by Fed. R. Civ. P. 8. He does not identify the mail that has been opened unlawfully, the way that he has been hindered from litigating a case or even the prison officials he believes are responsible for violating his rights. These facts are important because they would determine whether plaintiff stated a claim upon which relief may be granted.

"Legal mail" does not encompass everything plaintiff receives related to a lawsuit. For example, court orders are not entitled to any special privilege because they are public documents. Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987). Moreover, prisoners do not have a freestanding right to be present when prison staff open their legal mail. Vasquez v. Raemisch, 480 F. Supp. 2d 1120, 1138-41 (W.D. Wis. 2007). At the most, prisoners have such a right when the opening of legal mail interferes with a lawsuit. Kaufman v. McCaughtry, 419 F.3d 678, 685-86 (7th Cir. 2005). It is impossible to tell from plaintiff's

9

allegations whether he could meet this requirement.

Even if plaintiff's allegations complied with Rule 8, I would deny his motion for leave to amend because his proposed new claim is not factually related to his claim in this case. Fed. R. Civ. P. 20. If plaintiff believes that prison officials are violating his right to have access to the courts, he must file a new lawsuit.

Motion for Recusal

In the beginning of his motion, plaintiff "request[s] a new judge" because he believes that I have "a conflict of interest in judgment and [am] steadfast in denying the plaintiff any procedure fairly." Dkt, #15, at 1. Two statutes exist for disqualifying a federal judge in particular case, 28 U.S.C. § 144 and § 455. Section 144 requires a federal judge to recuse herself for "personal bias or prejudice." Section 455(a) requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and section 455(b)(1) provides that a judge shall disqualify himself if he "has a personal bias or prejudice concerning a party." Because the phrase "personal bias or prejudice" found in § 144 mirrors the language of § 455(b), they may be considered together. Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000).

In deciding whether a judge must disqualify herself under 28 U.S.C. § 455(b)(1), the question is whether a reasonable person would be convinced the judge was biased. Hook v.

McDade, 89 F.3d 350, 355 (7th Cir. 1996) (internal quotation omitted). Recusal under §

455(b)(1) "is required only if actual bias or prejudice is proved by compelling evidence." Id.

Section §144 provides that when a party makes and files a timely and sufficient

affidavit alleging that the judge has a personal bias or prejudice either against him or in favor

of the adverse party, the judge should proceed no further and another judge should be

assigned to the proceeding. The affidavit is to "state the facts and the reasons for the belief

that bias or prejudice exists." The factual statements of the affidavit must support an

assertion of actual bias. United States v. Balistrieri, 779 F.2d 1191, 1199 (7th Cir. 1985).

They must be definite as to times, places, persons and circumstances. Id.  Only those facts

that are "sufficiently definite and particular to convince a reasonable person that bias exists"

need be credited. United States v. Boyd, 208 F.3d 638, 647 (7th Cir. 2000).  "Simple

conclusions, opinion or rumors are insufficient." Id.  The court must assume the truth of the

factual assertions even if it "knows them to be false." Balistrieri, 779 F.2d at 1199.

Plaintiff has not filed an affidavit stating the facts and reasons for his belief that bias

or prejudice exists. He simply contends in his motion that I am "being bias[ed] to [his]

claim."  Dkt. #15, at 2. However, it appears that his only ground for believing this is that

I have issued rulings that are not in his favor. That is not sufficient.  Liteky v. United States,

510 U.S. 540, 555 (1994).  In every lawsuit, judges make rulings adverse to one or the other

party. That these rulings may be unwelcome is simply too commonplace a circumstance to

11

support an allegation of bias.  Because plaintiff has failed to present compelling evidence of bias or prejudice, his motion for my recusal or disqualification will be denied.

Motion for Appointment of Counsel

Finally, plaintiff requests appointment of counsel.  (He makes this request pursuant to 18 U.S.C. § 3006A, but that statute applies to criminal cases; the correct statute is 28 U.S.C. §1915(e)(1).)  Although this court may not compel a lawyer to represent a litigant who is proceeding pro se, it may request that one do so voluntarily.  Pruitt v. Mote 503 F.3d 647 (7th Cir. 2007) (en banc).  Under Pruitt, the decision whether to appoint counsel requires to court to weigh the plaintiff's ability to represent himself against the complexity of the issues presented by the case.

In this case, plaintiff's ability to litigate competently is called into question by this very motion, in which he appears confused by various aspects of the decision of the court of appeals and this court's decisions.  Even if I concluded that plaintiff was minimally competent, the complexity of the issues that may arise in the case weigh in favor of an appointment of counsel.  Although the issues presented at plaintiff's prison disciplinary hearing were relatively straightforward, it will not be so simple to determine whether plaintiff suffered a deprivation of liberty that triggered the protections of the due process clause.  This view is supported by the court of appeals' decision to appoint counsel for plaintiff on appeal.

12

Further, plaintiff's case represents the first time the court of appeals has held conclusively that placement in segregation of a definite duration may require due process before the penalty is imposed.  Thus, many potentially difficult questions remain regarding the application of the court of appeals' decision, particularly with respect to the way in which the severity of the conditions of segregation (and as compared to what metric) is considered in conjunction with the duration of confinement.  E.g., Marion, 559 F.3d at 698 (noting that due process is not required unless conditions are "unusually harsh" but not explaining how courts should measure this).

Questions about the severity of plaintiff's conditions raise difficult factual challenges as well.  The court of appeals suggested that relevant questions for plaintiff's claim may relate to the relative severity of his experience in segregation as compared to conditions at other prisons.  E.g., id. at 699 ("Without a factual record, we cannot determine whether the actual conditions of Mr. Marion's lengthy segregation are harsher than the conditions found in the most restrictive prison in Wisconsin.")  Obtaining and analyzing such information would be difficult for a pro se prisoner, not just because of the intellectual challenges in framing appropriate discovery requests and interpreting the potentially voluminous data, but also because of significant practical obstacles as a result of likely security-related objections that defendants would raise if asked to produce such documents to a prisoner.

Therefore, I will stay all further proceedings in this case temporarily in order to locate

13

a lawyer who is willing to represent plaintiff.  A lawyer accepting appointments in cases such as this take on the representation with no guarantee of compensation for his or her work.

Plaintiff should be aware that in any case in which a party is represented by a lawyer, the court communicates only with counsel.  Thus, once counsel is appointed, the court will no longer communicate with plaintiff directly about matters pertaining to this case.  It will be expected that plaintiff will communicate directly with his lawyer about any concerns and allow the lawyer to exercise his or her professional judgment to determine which matters are appropriate to bring to the court's attention and what motions and other documents are appropriate to file.

ORDER

IT IS ORDERED that

1.  Plaintiff War N. Marion's motion for reconsideration, motion for recusal and motion for leave to amend his complaint are DENIED.

2.  Plaintiff's motion for appointment of counsel is GRANTED.  Further proceedings in this case are STAYED pending appointment of counsel for plaintiff.  If I find counsel willing to represent plaintiff, I will advise the parties of that fact.  Soon thereafter, a status

14

conference will be held to establish a new schedule for this case.

Entered this 14th day of May, 2009.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge